### ATLANTIC AVE. R. CO. v. VAN DYKE.

(Circuit Court of Appeals, Second Circuit. February 20, 1896.)

#### No. 94.

1. CHARGING JURY—QUESTION SUBMITTED.

Plaintiff, a lineman in the employ of the defendant street-railway company, was injured in consequence of the wagon on which he was standing while engaged in his work being struck by a car controlled by another servant of the defendant. When the plaintiff rested his case, defendant moved for the direction of a verdict in its favor, on the ground that the proof showed that the accident was caused by the negligence of a fellow

servant of plaintiff, and the court was about to give such direction, but permitted plaintiff to reopen his case for proof of some defect in the car. *Held* that, under these circumstances, the jury must be assumed to have understood that they were to pass only upon the question finally sent to them, viz. the existence of a defect in the car, though no instruction that defendant would not be liable if the accident happened solely by the negligence of plaintiff's fellow servant was either given or requested.

2. NEGLIGENCE—SAFE APPLIANCES.

The evidence showed that the car had no sand box to sand the track and enable the brake to work effectively; that none of the defendant's cars had sand boxes, but that defendant, at certain seasons of the year, not including that at which the accident happened, caused the track to be sanded by sending out a special car to scatter the sand, which defendant claimed to be a better method. The court charged the jury that the only question was whether the car had proper appliances for stopping it; that the defendant was not bound to provide the very best appliances, but to provide what is reasonable, and such as a prudent man would provide; and left it to the jury to determine whether the car had reasonable appliances for stopping, or there was a lack of what it really ought to have had, which prevented its being stopped, and caused the accident. *Held* no error.

3. EVIDENCE—OPINION—HARMLESS ERROR.

A witness for plaintiff, testifying as an expert in the mechanism of electric cars such as that which caused the accident, was asked whether such a car could be safely operated without a sand box, and testified that it could not. *Held* that, although the question was improper, as calling for an opinion on the question which the jury were to decide, the error was harmless, as the witness' subsequent testimony showed that he meant only that the brake would not work, on a greasy rail, without sand.

In Error to the Circuit Court of the United States for the Eastern District of New York.

This case comes here on a writ of error to review a judgment of the circuit court, Eastern district of New York, entered May 9, 1895, for $6,192.43, in favor of the defendant in error, who was plaintiff below. The judgment was entered upon the verdict of a jury awarding $6,000 as damages for personal injuries resulting from the negligence of plaintiff in error, who was defendant below. A motion to set the verdict aside was denied. 67 Fed. 296.

Louis Malthaner, for plaintiff in error.

Raphael J. Moses, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Defendant owned and operated an electric street railroad in the city of Brooklyn, using the so-called "trolley," or overhead wire, system. Plaintiff was one of a gang of linemen employed by defendant, engaged in putting in cross-overs, switches, etc., and repairing the wires. This work was done at night, with the aid of an extension or tower wagon. Plaintiff, on the night of the accident, a dry, fair night, was stringing a span wire at a part of the line which runs under the track of an elevated railroad, an operation which required him to stand on the movable platform of the tower wagon about 20 feet above the street. While thus engaged, one of the cars of defendant, in charge of a conductor, and operated by a motorman, came along at a high rate of speed, and

struck the tower wagon, knocking defendant off, whereby he sustained severe injuries. Defendant assigns error to the court's refusal to direct a verdict in its favor, to the charge to the jury, and to the admission of certain evidence.

There was evidence that the motive power was cut off and the brake applied while the car was yet from 30 to 60 feet short of the tower wagon. It was running on an up grade, and the conductor testified that with the normal condition of a dry track and any power on, going up grade at the usual rate, a car could be stopped within 10 feet. The jury were not specifically charged that defendant would not be liable if the accident happened solely by reason of the carelessness of the motorman, but no request was made so to instruct them. Moreover, when the plaintiff first rested his case, defendant moved for a direction in its favor on the ground that the proof showed that the accident happened through the negligence of a fellow servant. The court thereupon held that there was not sufficient evidence to send the case to the jury, and was about to direct a verdict for defendant, when, upon plaintiff's request, he allowed the case to be reopened for further proof as to some defect in the car. Under these circumstances it must be assumed that the jury understood that they were to pass only upon the question which the court finally sent to them. The car in question had no sand box. None of the cars of this line had. The sand box is an appliance whereby, when required, sand is deposited on the track in front of the wheels, whereby the track is roughened, and the progress of the car retarded. The motorman is thus enabled to have more complete control of his car than he would if the sand were not there. Defendant, in certain seasons of the year,—not in summer,—sends out a special car, in which are men with shovels, who throw sand into hoppers through which it falls upon the track. Defendant contended that this was a more approved method of sanding the track than by the use of a sand box on each passenger car. Sand is, of course, more necessary when the weather is frosty or foggy, and there is sometimes a dropping of oil and water and steam from an elevated railroad track, which would have a tendency to wet the track beneath, or to make it slippery. As this accident happened on September 13th, it is a fair inference that the sand car was not at the time in use. The court charged the jury: That the only question was whether the car had proper appliances on it for stopping it. That "the defendant was not bound to provide the very best appliances known for the purpose, but the defendant is bound to provide what is reasonable in view of what can be provided for such use; that is, appliances such as reasonable and prudent men would provide." That "if this car was a reasonable and proper car, reasonably fitted, such as a reasonable and prudent man would put upon the tracks and line, and, having in view all the dangers and all the circumstances, it is for you to say whether it had reasonable appliances for stopping it,—if this car had such appliances, it is enough, and the verdict should be for the defendant. It is for you to say, looking at all the testimony, and what the witnesses have said about what is usual and proper as to the necessity for such things, looking

it all over in every aspect,—whether you think this car was fitted and well equipped for stopping it; and if you do think so, then return a verdict for the defendant. That being the case, then this is an accident for which the defendant is not responsible." That "if you can find that there was a lack of what the car really ought to have had that prevented its being stopped, and in that way injured him, then you will return a verdict for the plaintiff, and otherwise not." And the court further charged: "The plaintiff must make out his case by a fair preponderance of evidence, so that you can see fairly that there was a defect; that the car ought to have had a sand box; that there was something that it didn't have that it ought to have had, and the lack of which prevented the car from being stopped before it reached this wagon, and that that was what injured the plaintiff,—then he is entitled to a verdict." Upon the evidence, this was a proper charge. If defendant wished more specific instructions as to the reasonableness of using some other method of applying the sand, as, for example, by the use of a sand car, it should have requested them; but in view of the evidence, which, so far as the record here shows, indicated that at the season of year when the accident happened the alternative method was not in use, it is doubtful whether such instructions could properly be given. Defendant excepted "to that part of the charge where it is said that the car ought to have a sand box, or that the track ought to have been sanded." We find no such express instruction in the charge, nor any language in it which at all imports any such instruction. On the contrary, it was distinctly left to the jury to say whether the car was operated with reasonably fit appliances for stopping it.

The only other exception which need be considered is to the allowance of a question to plaintiff's witness Bullock. He was an electrician, familiar with the "mechanism and machinery" of electrical cars. He was asked, "Can an electrical motor car be safely operated without a sand box, through the streets of the city of Brooklyn?" to which he answered, "No, sir; not through a city." The question was duly objected to as incompetent, and exception to its allowance was reserved. The question was an improper one. It was for the jury, upon the whole evidence, to answer the question whether or not it was safe to operate an electric motor car without a sand box, in the streets of Brooklyn. As an expert, the witness was competent to testify as to the relative efficiency of the stopping devices when operated with or without sand; to state, if he could, within what time or within what space a car with a sand box and a car without a sand box could be stopped. To do even this, moreover, he would probably require more data than the question supplied him with. The condition of the track, the grade, the speed of the car, its weight, and consequent momentum, are undoubtedly essential elements of the problem. It is not the sand box itself which helps to stop the car, but the sand which comes out of the box, and it would produce the same effect however it got on the track. But, although the witness was thus invited and allowed to give his opinion as to how the jury should decide the case, we do not see that it has operated to the

prejudice of the defendant. The subsequent testimony of the witness showed that all he meant was that "the brake will not work on a greasy rail without sand," and that with sand "you can stop a car almost immediately"; and it is fair to assume that the jury so understood his evidence, and gave it weight accordingly. The judgment of the circuit court is affirmed.

(March 2, 1896.)

Upon a petition for rehearing the following memorandum was made:

PER CURIAM. There was no "inadvertent confusion" in the mind of the court as to the phrase "sand box" and "sand car," nor was there any "misapprehension" of the witness Frick's statement "a sand box is never used in the summer time, but in the winter time." The court found abundant support for the statement of fact challenged by the petition in the particular circumstances attending the accident and in the further statements of this same witness: "In the place of putting sand boxes in cars," "we run a particular car over our road at certain times;" "to sand the track;" "we do not keep sand on the track all the time;" "in certain seasons it is not necessary to run sand cars out at all;" "this accident did not happen in the time of year when it needed sand." The other points presented on this motion are sufficiently discussed in the original opinion. Motion for reargument denied.